**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| VITAHEAT MEDICAL, LLC, | ) | No. 18 B 35295 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| ILENE F. GOLDSTEIN, chapter 7 trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 20 A 406 |
| | ) | |
| WILLIAM HAAS and THINHEAT, LLC, | ) | |
| | ) | |
| Defendants. | ) | Judge Goldgar |

**MEMORANDUM OPINION**

VitaHEAT Medical, LLC manufactured and sold medical products. William Haas was a VitaHEAT director, and his company, Thinheat, LLC, was one of VitaHEAT's members. Thinheat owned several patents and in 2012 issued a patent license to VitaHEAT. Six years later, unhappy with VitaHEAT, Haas had Thinheat terminate the license, and VitaHEAT ended up in a chapter 7 bankruptcy case with Ilene Goldstein as trustee. Goldstein then brought this adversary proceeding alleging that by terminating the license, Haas and Thinheat breached their fiduciary duties to VitaHEAT. She wants damages for the breach. She also alleges that the license's termination was a fraudulent transfer and asks to have the transfer avoided. Haas and Thinheat have moved to dismiss Goldstein's amended complaint for failure to state a claim.

Haas and Thinheat's motion is well taken. For the reasons below, the motion will be granted and the amended complaint dismissed. Goldstein will have leave to amend again.

## 1. Jurisdiction

The court has subject matter jurisdiction under 28 U.S.C. § 1334(a) and the district court's Internal Operating Procedure 15(a).  The trustee's fraudulent transfer claim is one "arising under title 11," 28 U.S.C. § 1334(b), and so is a core proceeding, 28 U.S.C. § 157(b)(2)(H).  Whether the breach of fiduciary duty claim is core or non-core is uncertain.[1]  But the core/non-core distinction matters only for entry of final judgment.  *Stern*, 564 U.S. at 473-74.  Since no final judgment will be entered on the current motion, the question need not be answered now.[2]

## 2. Facts

On a motion to dismiss, all well-pleaded factual allegations in the complaint are taken as true, and all reasonable inferences are drawn in favor of the non-movant.  *Cheli v. Taylorville Cmty. Sch. Dist.,* 986 F.3d 1035, 1038  (7th Cir. 2021).  Along with the allegations, the court can

---

[1]     A chapter 7 trustee's state law damage claim for breach of fiduciary duty is usually non-core.  *See Hudgins v. Shah (In re Systems Eng'g & Energy Mgmt. Assocs., Inc.)*, 252 B.R. 635, 644 (Bankr. E.D. Va. 2000).  Depending on the claim's nature, though, the claim could be core if the defendant has asserted a claim against the bankruptcy estate.  28 U.S.C. § 157(b)(2)(C); *see generally Stern v. Marshall*, 564 U.S. 462 (2011).  Haas filed a claim in VitaHEAT's case, but the claimant's identity is unclear.  On the proof of claim form, Haas listed himself as the creditor but then gave "Thinheat LLC" as another name the creditor had used.  He also checked the box stating that "I am the creditor" but then signed the form as "Owner" of "Thinheat LLC."  If Haas and Thinheat are both asserting the claim against VitaHEAT's bankruptcy estate, Goldstein's claim could be core.  If only one of them is asserting it, the claim is non-core.

[2]     The core/non-core question will have to be answered eventually – unless the parties consent to the bankruptcy court's entry of final judgment.  28 U.S.C. § 157(c)(2); *see Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 671 (2015).  Goldstein has already consented (Compl. ¶ 1), but Haas and Thinheat have not said whether they do, although Rule 7012(b) required them to say.  *See* Fed. R. Bankr. P. 7012(b) ("A responsive pleading shall include a statement that the party does or does not consent to entry of final orders or judgment by the bankruptcy court").

consider documents mentioned in the complaint and central to it.  *O'Brien v. Village of Lincolnshire*, 955 F.3d 616, 621 (7th Cir. 2020).  The court can also take judicial notice of matters of public record, "including pleadings, orders, and transcripts from prior proceedings in the case."  *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013).

Taken together, the complaint, documents mentioned in the complaint, and matters subject to judicial notice allege the following facts.

### a.  William Haas and the LLCs

In early 2012, William Haas formed Thinheat LLC as an Illinois limited liability company.  (Compl. ¶ 7).  Haas was Thinheat's sole member.  (*Id.* ¶ 14).  A few weeks later, VitaHEAT Medical LLC was incorporated as a Delaware limited liability company, it is unclear by whom.  (*Id.* ¶ 9).  VitaHEAT manufactured and sold medical products.  (*Id.* ¶ 11).  Thinheat was one of VitaHEAT's members, and Haas was a VitaHEAT director.  (*Id.* ¶¶ 5, 13).

### b.  The Patents and the License

Haas owns four patents for "printed conductive ink technology for application in the healthcare field."  (Compl. ¶ 6; *see* Bankr. Dkt. No. 1 at 15).  Shortly after forming Thinheat, Haas assigned it his rights in the patents.  (Compl. ¶¶ 8, 12).  Thinheat then entered into a license agreement with VitaHEAT, giving VitaHEAT the exclusive right to use the patents to manufacture, use, sell, and distribute certain medical products.  (*Id.* ¶ 12).  In exchange, VitaHEAT agreed to pay Thinheat monthly royalties.  (*Id.* at 3).  Although the rights assigned in the license were exclusive, VitaHEAT could reassign them to third parties.  (Mot. Ex. B at 1, 6).

The VitaHEAT license was perpetual, lasting until the patents lapsed or expired, unless either party terminated the license sooner.  Thinheat could terminate the license if VitaHEAT

breached a material obligation and failed to cure the breach within a specified time after written notice. (*Id.* at 4). Thinheat could also terminate the license immediately if VitaHEAT stopped doing business, or if it became "subject to any proceeding under applicable liquidation, insolvency, bankruptcy, reorganization or similar laws." (*Id.*).

At various times Goldstein does not specify, Haas threatened to terminate the license. (Compl. ¶ 19). Finally, in October 2018 Haas made good on his threats. He and Thinheat sent VitaHEAT a letter terminating the license. (Compl. ¶¶ 19, 20; Resp. Ex.1 at 23). The letter complained that VitaHEAT's had "fail[ed] . . . to protect" the patents and gave two examples. (Resp. Ex. 1 at 23). One was VitaHEAT's contracting with 3M Corporation and not telling Haas about the contract. (*Id.*). The other was VitaHEAT's inaction after a company believed to have links to a VitaHEAT board member used the patented technology. (*Id.*).

The letter added that it had "become clear" VitaHEAT was "effectively insolvent . . . trigger[ing] . . . the Termination Provision[ ]." (*Id.*). There had even been "conversations . . . . related to a bankruptcy filing," and Haas and Thinheat had been "very recently advised" that VitaHEAT's assets, including the license, might be auctioned. (*Id.*). "For these reasons, and others," the letter concluded, "Haas, individually and on behalf of Thinheat LLC . . . immediately revokes its License Agreement." (*Id.*).

Haas's threats to terminate the license made it difficult for VitaHEAT to enjoy its benefits, harming the company's continued operations. (Compl. ¶ 25). The eventual termination of the license left VitaHEAT unable to operate at all. (*Id.*).

### c. The Bankruptcy Case

Two months after the termination, VitaHEAT filed this chapter 7 bankruptcy case. (*Id.* ¶ 27). Goldstein was appointed trustee. (*Id.* ¶ 4).

In June 2019, Haas and Thinheat moved jointly for relief from the automatic stay and to compel Goldstein to abandon any interest in the patents.  (Compl. ¶ 21; Bankr. Dkt. No. 17).  In the motion, Haas and Thinheat took seemingly inconsistent positions on whether the license had been terminated.  Assuming it had, they argued that abandonment was appropriate because the termination left the estate with no interest in the license or the patents.  (Compl. ¶¶ 21, 30; Bankr. Dkt. No. 17).  But they also asked for an order lifting the stay so Thinheat could "ensure the license is terminated."  (Bankr. Dkt. No. 17 at 1).

After a hearing at which Goldstein expressed no objection to the motion (Bankr. Dkt. No. 34; Tr. at 1-6), the court entered two orders.  One compelled abandonment of the estate's interests in the patents (*id.* No. 21); the other modified the stay to allow Thinheat to terminate the license (*id.* No. 23).[3]

### d.  The Adversary Complaint

Goldstein then filed this adversary proceeding against Haas and Thinheat.  Her amended complaint has two counts.  Count I is a claim for damages alleging that Haas and Thinheat's breached their fiduciary duties to VitaHEAT in threatening to terminate and ultimately terminating the license.  Count II is a claim under section 548 of the Bankruptcy Code to avoid

---

[3]        The parties quarrel over whether in lifting the stay the court ruled on the termination issue.  Haas and Thinheat insist that the license had not been terminated prepetition "but was in fact terminated by this Court."  (Mot. at 2).  Goldstein responds that the license had indeed been terminated, and because the court granted their motion Haas and Thinheat are "judicially estopped" to claim otherwise.  (Resp. at 8).  The transcript of the brief June 2019 hearing shows that both sides are wrong.  The court granted the motion chiefly because Goldstein did not oppose it.  (Bankr. Dkt. No. 34; Tr. at 3 ("I don't have an objection with the modification of the stay")).  The court entered an order permitting Thinheat "to declare [the license] breached . . . and terminate the same" (Bankr. Dkt. No. 21) because that was the order Thinheat proposed, and Goldstein did not question it.  At no point did the court "rule" on whether the license had been breached or terminated.

the license's termination as constructively fraudulent and recover its value under section 550.

Haas and Thinheat move under Rule 12(b)(6) of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 12(b)(6) (made applicable by Fed. R. Bankr. 7012(b)), to dismiss both counts of the amended complaint for failure to state claims.

### 3. Discussion

The motion to dismiss will be granted.  The amended complaint fails to state claims for breach of fiduciary duty or avoidance of a fraudulent transfer.

### a. Rule 12(b)(6) Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must clear "two easy-to-clear hurdles." *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).  First, the complaint must describe the claim in enough detail to give the defendant fair notice of its nature.  *Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 598 (7th Cir. 2019).  "[A] formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Second, the claim must be "plausible on its face," *id.*, at 570, meaning the plaintiff's right to relief must rise above a "speculative level," *id.* at 555; *see also Cornielsen*, 916 F.3d at 598. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Nelson v. City of Chi.*, 992 F.3d 599, 603 (7th Cir. 2021).

### b. Count I – Breach of Fiduciary Duty

Count I fails to meet these standards and will be dismissed.  Goldstein has alleged that

Haas and Thinheat owed a fiduciary duty to VitaHEAT, but she has not alleged that they breached that duty.

### i. Applicable Law

The first question is whose law applies to the fiduciary duty claim, a subject on which the parties appear to disagree. Neither side acknowledges the disagreement or addresses choice of law, but Goldstein relies on Delaware law in her brief, and Haas and Thinheat cite Illinois law.

Deciding the applicable law has two steps. First, the court "must determine what choice-of-law rule should be used." *In re Morris*, 30 F.3d 1578, 1581 (7th Cir. 1994); *Gierum v. Glick (In re Glick),* 568 B.R. 634, 659 (Bankr. N.D. Ill. 2017). Then, the court must apply the controlling choice-of-law rule to determine the substantive law that governs the dispute. *In re Aircrash Disaster near Roselawn, Ind.*, 948 F. Supp. 747, 751 (N.D. Ill. 1996); *Glick*, 568 B.R. at 659-60.

Ordinarily, the parties' failure to discuss choice of law would mean that Illinois choice-of-law rules apply. When no party raises a choice of law question in federal court, "the law of the forum state" usually applies. *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 345 (7th Cir. 2010). In bankruptcy cases, determining the choice-of-law rule can still pose a problem because "the Seventh Circuit has not resolved 'the persisting uncertainty as to whether state or federal law supplies the choice of law rules.'" *Glick,* 568 B.R. at 660 (quoting *In re Jafari*, 569 F.3d 644, 649 (7th Cir. 2009)). The problem disappears, though, when the federal and forum state choice-of-law rules are the same. *Id.* If they are, the court need not decide which one applies. *Id.*

Here, the choice-of-law rules are the same. Federal common law and Illinois state law both apply the internal affairs doctrine to breach of fiduciary duty claims. Federal common law

generally follows the Restatement (Second) of Conflict of Laws on choice-of-law questions.

*Knauer v. Kitchens (In re Eastern Livestock Co., LLC)*, 547 B.R. 277, 284 (Bankr. S.D. Ind.

2016). The Restatement applies the law of the state of incorporation to claims involving the

liability of corporate officers and directors. *See* Restatement (Second) of Conflict of Laws §§

307-309 (1971). Illinois, too, applies the law of the state of incorporation to breach of fiduciary

duty claims. *Official Comm. of Unsecured Creditors v. The Fountainhead Grp., Inc. (In re*

*Bridgeview Aerosol, Inc.)*, 538 B.R. 477, 496 (Bankr. N.D. Ill. 2015).

Goldstein alleges that VitaHEAT is a limited liability company incorporated in Delaware.

(Compl. ¶ 9). Because that allegation is presumed true on a motion to dismiss, Delaware law,

not Illinois law, applies the breach of fiduciary duty claim in the amended complaint.[4] *See*

*Carter*, 2010 WL 424477, at *2.

### ii. Fiduciary Duty

Count I fails to state a plausible claim for breach of fiduciary duty under Delaware law.

Although Haas and Thinheat arguably owed VitaHEAT fiduciary duties, Goldstein has not

alleged that they breached those duties. She has alleged only that they exercised their

---

[4]     There is some reason to doubt whether the allegation is in fact true. According to
its chapter 7 petition, VitaHEAT was once called ThinHEAT Medical, LLC. (Bankr. Dkt. No.
1). The license describes the licensor and licensee as "Thinheat, LLC, an Illinois limited liability
company," on the one hand and "Thin Heat Medical, LLC, an Illinois limited liability company,"
on the other. (Mot. Ex. B at 1). The license, in other words, suggests that VitaHEAT might be
an Illinois LLC rather than a Delaware LLC. (Or not – the license later identifies Thin Heat
Medical Holdings, LLC, as "a Delaware limited company." (Mot. Ex. B at 2).) But doubts
about VitaHEAT's true state of incorporation need not be resolved now. *See Gibson v. City of
Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990) (noting that a motion to dismiss only tests the
sufficiency of the complaint and does not decide the merits of the dispute); *see, e.g., Carter v.
Deutsche Bank Nat'l Trust Co.*, No. C09-3033 BZ, 2010 WL 424477 at *2 (N.D. Cal. Jan. 27,
2010) (declining to resolve an apparent dispute over state of incorporation on a motion to
dismiss).

contractual rights under the license.

To state a claim under Delaware law for breach of fiduciary duty, a plaintiff must allege both (1) that the defendant owed the plaintiff a fiduciary duty, and (2) that the defendant breached it. *Miller v. Bradley (In re W.J. Bradley Mortg. Capital, LLC)*, 598 B.R. 150, 162 (Bankr. D. Del. 2019); *Beskrone v. OpenGate Capital Grp. (In re PennySaver USA Publ'g, LLC)*, 587 B.R. 445, 463-64 (Bankr. D. Del. 2018).

The amended complaint suggests that Haas and Thinheat were VitaHEAT's fiduciaries. Delaware law defines a fiduciary relationship as one "where one person reposes special trust in and reliance on the judgment of another or where a special duty exists on the part of one person to protect the interests of another." *Auriga Capital Corp. v. Gatz Props., LLC*, 40 A.3d 839, 850 (Del. Ch. 2012). Goldstein alleges that Haas was a director of VitaHEAT, and Thinheat was a member. Members and directors of a limited liability company owe the company traditional corporate fiduciary duties of loyalty and care. *W.J. Bradley*, 598 B.R. at 163; *PennySaver*, 587 B.R. at 464 n. 114; *Emerald Capital Advisors Corp. v. Karma Auto. LLC (In re FAH Liquidation Corp.*, 581 B.R. 98, 112 (Bankr. D. Del. 2017); *Auriga*, 40 A.3d at 849.

Where Goldstein's claim falters is the second element, Haas and Thinheat's breach of that duty. In her complaint, Goldstein focuses on the duty of loyalty. A fiduciary breaches his duty of loyalty to his company when he places his own personal interests over the company's best interests. *W.J. Bradley*, 598 B.R. at 163; *Burtch v. Opus LLC (In re Opus E., LLC)*, 528 B.R. 30, 66 (Bankr. D. Del. 2015). Goldstein claims that Haas and Thinheat violated their duty of loyalty to VitaHEAT when they threatened to terminate and then terminated the license, because in doing so they placed their interests above VitaHEAT's. (Compl. ¶ 24).

Goldstein is mistaken. Under Delaware law, actions a corporate fiduciary takes under a

-9-

contract with his corporation may breach the contract itself, but they do not breach his duties to the corporation. *Riblet Prods. Corp. v. Nagy*, 683 A.2d 37, 39-40 (Del. 1996). That is so even though the fiduciary owes the corporation a duty of loyalty and acts under the contract purely out of self-interest. A corporate fiduciary need not "give up" his contractual rights "to his detriment in order to fulfill his fiduciary duty." *Ocean Tomo, LLC v. PatentRatings, LLC*, 375 F. Supp. 3d 915, 942 (N.D. Ill. 2019). Put another way, a corporate fiduciary's duties to the corporation do not entail "self-sacrifice." *Odyssey Partners, L.P. v. Fleming Cos., Inc.* 735 A.2d 386, 415 (Del. Ch. 1999). The corporation's recourse, if any, is a breach of contract action against the fiduciary, not an action for breach of fiduciary duty. *Nelson v. JAED Corp.*, C.A. No. N12C-06-068 CLS, 2013 WL 1092200, at *6 (Del. Super. Ct. Jan. 23, 2013).

Goldstein alleges in Count I only that Haas and Thinheat threatened to exercise their rights under the license and ultimately did exercise them, terminating the license. She alleges no misconduct on their part other than the exercise of their contractual rights and does not assert even that the termination breached the license. According to the complaint, Haas and Thinheat simply did what the license entitled them to do. Without more, Count I states no claim for breach of fiduciary duty. *Cf. In re WeWork Litig.*, C.A. No. 2020-0258-AGB, 2020 WL 6375438, at *1 (Del. Ch. Oct. 30, 2020) (dismissing a breach of fiduciary duty claim against a corporate control group because the claim had no independent basis but was "duplicative of [the plaintiff's] contract claims")

Because Goldstein alleges a fiduciary duty but no breach of it, the motion to dismiss Count I will be granted. Count I will be dismissed.

### c. Count II – Avoidance of Fraudulent Transfer

Count II, the fraudulent transfer claim, will also be dismissed. Count II fails to state a

claim because Goldstein has not alleged either a transfer or VitaHEAT's insolvency.

Section 548(a)(1) of the Code allows a trustee to avoid any transfer of the debtor's interest in property if the transfer was made or incurred on or within two years before the petition date and was either actually or constructively fraudulent.  11 U.S.C. § 548(a)(1); *see FTI Consulting, Inc. v. Merit Mgmt. Grp., LP*, 830 F.3d 690, 694 (7th Cir. 2016).  A constructively fraudulent transfer is one "that gave the debtor (and consequently the estate in bankruptcy) less than what he transferred."  *Official Comm. of Unsecured Creditors of Great Lakes Quick Lube LP v. T.D. Invs. I, LLP (In re Great Lakes Quick Lube LP)*, 816 F.3d 482, 484 (7th Cir. 2016).

To avoid a transfer as constructively fraudulent under section 548(a)(1)(B), a plaintiff must allege: "(1) a transfer of the debtor's property or interest; (2) made within two years before the date the bankruptcy petition was filed; (3) for which the debtor received less than a reasonable equivalent value in return; and (4) that the debtor (a) was insolvent on the date of the transfer or became insolvent as a result, (b) engaged in business or a transaction as a result of which the debtor's remaining capital was unreasonably small, or (c) intended to incur, or should have known he would incur, debts he would be unable to pay."  *Peterson v. TTS Granite, Inc. (In re Mack Indus., Ltd.)*, 622 B.R. 887, 892 (Bankr. N.D. Ill. 2020).

The first element, a transfer, is critical, the "threshold issue in a fraudulent conveyance inquiry."  *Pettie v. Ringo (In re White)*, 559 B.R. 787, 796 (Bankr. N.D. Ga. 2016).  The Code defines "transfer" broadly as "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with—(i) property; or (ii) an interest in property."  *Great Lakes*, 816 F.3d at 485; 11 U.S.C. § 101(54)(D).  But despite the definition's breadth, not every transfer is avoidable under section 548.  To qualify, the transfer must have involved "the relinquishment of a valuable property right."  *Allan v. Archer-Daniels-Midland Co. (In re*

*Commodity Merchs., Inc.)*, 538 F.2d 1260, 1263 (7th Cir. 1976). Section 548(a) is designed to

recover only assets of which creditors have been wrongfully deprived. *Metro Water & Coffee*

*Servs., Inc. v. Rochester Cmty. Baseball, Inc. (In re Metro Water & Coffee Servs., Inc.)*, 157 B.R.

742, 747 (Bankr. W.D.N.Y. 1993). Unless the transfer took from creditors a "cognizable right,"

the transfer cannot be avoided and the property recovered for the bankruptcy estate. *See*

*Commodity Merchs.*, 538 F.2d at 1263.

Count II fails to allege a transfer. Goldstein maintains that the termination of

VitaHEAT's license was a transfer she can avoid. But a contract's termination is not an

avoidable transfer because it does "not operate to the prejudice of the legal or equitable rights of

the Debtor's creditors." *Metro Water*, 157 B.R. at 747; *Edwards v. Federal Home Loan Mortg.*

*Corp. (In re LiTenda Mortg. Corp.)*, 246 B.R. 185, 191 (Bankr. D.N.J. 2000) ("[A] pre-petition

termination of a contract according to its terms and the consequent cessation of a debtor's rights

under a contract does not constitute a transfer" under section 548(a)), *aff'd*, 276 F.3d 578 (3d

Cir. 2001); *Glick*, 568 B.R. at 672-73. When a contract is terminated, there has been no

"disposing of or parting with property" that the trustee can recover. 11 U.S.C. § 101(54)(D).

The debtor's contractual rights have expired, and the "[p]ossession of expired rights is the

equivalent of the possession of no rights." *Sullivan v. Willock (In re Wey)*, 854 F.2d 196, 199

(7th Cir. 1988); *see also Nathan v. Minardi (In re Hloros)*, No. 17-12099, 2017 WL 5903457, at

*4 (E.D. Mich. Nov. 30, 2017). With no transfer to avoid, Goldstein has no section 548 claim.[5]

---

[5]     If the debtor has some cognizable contractual right when the contract is
terminated – an assignment right, for example – the termination might be a transfer under section
548. *See Commodity Merchs.*, 538 F.2d at 1263 (observing in dictum that if a contract is freely
assignable, termination might prevent the debtor from selling the contract). Although
VitaHEAT's license had a liberal assignment provision (Mot. Ex. B at 6-7), Goldstein does not
allege that VitaHEAT could have assigned the license had it not been terminated. She does
allege that the termination "left the Debtor with no viable options." (Compl. ¶ 25). What that

-12-

Citing *EBC I, Inc. v. America Online, Inc. (In re EBC I, Inc.)*, 356 B.R. 631 (Bankr. D. Del. 2006), Goldstein argues that "under certain circumstances a party's termination of an agreement can constitute a transfer of property." (Resp. at 12). Perhaps – under "certain circumstances." But the circumstances present in *EBC I* are absent here. In *EBC I*, the debtor had prepaid for advertising services under a contract, and the court said the contract's termination caused the "transfer" of those services. *EBC I*, 356 B.R. at 637. Goldstein does not allege that VitaHEAT prepaid for services under the license and then lost the benefit of the prepayments when the license was terminated. The license was just that: a license. Under it, VitaHEAT paid the licensor royalties for the use of its patents. The licensor provided no services in return. If other circumstances turn the termination here into a transfer, Goldstein has not alleged them.

Count II also fails to allege that VitaHEAT was insolvent when Haas and Thinheat terminated the license. A complaint alleging a constructive fraud claim "must plead facts from which an inference of insolvency can be drawn." *Marwil v. Oncale (In re Life Fund 5.1 LLC)*, Nos. 09 B 32672, 10 A 42, 2010 WL 2650024, at *7 (Bankr. N.D. Ill. June 30, 2010). Goldstein supplies no facts. She alleges that "the Debtor was insolvent at the time of the termination." (Compl. ¶ 42). She also mentions the October 2018 letter from Haas and Thinheat stating that it had "become clear" VitaHEAT was "effectively insolvent." (Compl. ¶¶ 19, 20; Resp. Ex.1 at 23). But these are merely conclusions, not facts. More is required.

Because Goldstein has alleged neither a transfer nor insolvency, she has not stated a claim under section 548(a)(1). The motion to dismiss Count II will be granted. Count II will be dismissed.

---

means, though, is unclear.

### d. Leave to Amend

Goldstein will be given leave to amend her complaint again.  A plaintiff whose complaint has been dismissed should generally receive "at least one opportunity to amend."  *O'Brien v. Village of Lincolnshire*, 955 F.3d 616, 628 (7th Cir. 2020).  Indeed, leave should be denied only when it is clear the complaint's defects cannot be corrected.  *Sharif Pharmacy, Inc. v. Prime Therapeutics, LLC,* 950 F.3d 911, 919 (7th Cir. 2020).  That kind of clarity is rare, *Schiller DuCanto & Fleck, LLP v. Potter (In re Potter)*, 616 B.R. 745, 753 (Bankr. N.D. Ill. 2020), and is absent here.

### 4. Conclusion

The motion of defendants William Haas and Thinheat LLC to dismiss the amended adversary complaint of trustee Ilene F. Goldstein is granted.  Goldstein has leave to amend.  A separate order will be entered consistent with this opinion.

Dated: May 17, 2021

_____

A. Benjamin Goldgar
United States Bankruptcy Judge